# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00040-CV

**Thomas Ellason, Appellant**

**v.**

**Estate of Camille Talitha Scott, Deceased, Appellee**

### FROM THE COUNTY COURT OF LLANO COUNTY
### NO. 06421, HONORABLE WAYNE BRASCOM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pro se appellant Thomas Ellason appeals from the trial court's "Order Approving Account for Final Settlement and Authorizing Expenditures," which closed the estate of Camille Talitha Scott. We affirm the trial court's order.

Ms. Scott was appellant's grandmother. She had one son, Roy Kirk Ellason, and Roy Kirk Ellason had three sons by his first marriage—Roy Warren Ellason, Allen Kirk Ellason, and appellant. Roy Kirk Ellason's first marriage ended in divorce in 1970, and he married Laura Ann Ellason in 1973.[1] Roy Kirk Ellason died in January 2009, and Ms. Scott died without a will about six months later. Ms. Ellason sought to be and was named administratrix of Ms. Scott's estate.[2] On January 15, 2010, Ms. Ellason filed an inventory of the estate. She stated that Ms. Scott owned

---

[1] Because appellant and Laura Ann Ellason share a last name, we will refer to Thomas Ellason as "appellant" and to Laura Ann Ellason as "Ms. Ellason."

[2] Grandson Roy Warren Ellason waived and renounced any right to administer the estate, and appellant and Allen Kirk Ellason were incarcerated at the time Ms. Ellason filed her application for letters of administration.

cash and personal property valued at $56,668.59 that was subject to probate and that five pieces of real property worth a total of $1,245,000 were "nontestamentary assets and [were] transferred to the named beneficiary of The Camille Scott Family Trust" pursuant to the probate code. Ms. Ellason was apparently named sole beneficiary of the trust.

Appellant filed several motions objecting to Ms. Ellason's handling of the estate and asserted that Ms. Scott "had no right to give" the property to Ms. Ellason and that it was supposed to be given to appellant and his brothers, "as per the Ellason family." He alleged that Ms. Ellason "used fraud and undue influence to obtain said real properties to make sure the three Ellason brothers would receive nothing." Appellant also filed a copy of a letter sent to him by Ms. Ellason in which she explained that Ms. Scott "literally hated your mother. So much that it spilled over onto you 3 boys. . . . So, she sold her family land. [S]he didn't want [appellant's mother] or any of her blood line to ever step foot on her family land. The land that was left was to go to Kirk and then me." Ms. Ellason also said that Ms. Scott intended for all of her cash and personal property to go to the family trust but that Ms. Scott's lawyer "didn't include it in the trust. So, that's the only reason you and your brothers are getting anything at all." Ms. Ellason said that if and when she decided to sell two particular pieces of property, she would give half of the proceeds to appellant and his brothers,[3] and explained that when she died, her wishes about her property would be made clear. She concluded her letter by saying, "I hope you'll understand & know that yes, I am looking out for me. If I don't how am I suppose to survive?"

Appellant filed a "Motion to Contest Will," asserting that Ms. Scott's "will" was improperly executed, that she lacked testamentary capacity to execute it, and that Ms. Ellason

---

[3] It does not appear that the properties Ms. Ellason referenced in her letter were among the pieces of real property that were transferred to the trust.

exerted fraud and undue influence to overpower Ms. Scott's mind. The trial court approved Ms. Ellason's final accounting, and appellant and his brothers each received slightly less than $10,000.

On appeal, appellant raises seven issues, all attacking Ms. Scott's "will." He alleges: that the will was not properly executed or self-proven; that Ms. Scott lacked testamentary capacity at the time she executed the will because she was "infuriated at the rightful heirs," which "made her make a very rash and harsh factor [sic]"; that she only had "a document that merely evidences an intention to dispose of this real property and such is not a will"; that she "was mistaken about the contents" of the will and that the "real property omitted was in conflict of what the heirs grandfather and heirs bloodline wanted"; that the will was the result of fraud and undue influence by Ms. Ellason; and that this Court should impose a constructive trust to protect the property, which "was solely for the grandchildren," not Ms. Ellason, who "is not bloodline of the family."

All of appellant's issues relate to a "will" that appellant alleges was improperly executed. However, Ms. Scott died intestate, and no will was presented for probate. In the initial inventory prepared by Ms. Ellason, she averred that the real property in question was nontestamentary and was transferred to a trust. Section 450 of the probate code provides that a person may arrange for "property which is the subject of the instrument" to "pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently," and such a provision "is deemed to be nontestamentary." Tex. Prob. Code § 450(a)(3); *see also Woodfin v. Coleman*, 931 S.W.2d 383, 385 (Tex. App.—Austin 1996, writ denied) (assets disposed of under section 450 are nontestamentary).

It appears that Ms. Scott transferred the vast majority of her estate into the trust and designated Ms. Ellason as the sole beneficiary. However, the record does not include any evidence

3

showing how or when Ms. Scott set up her trust or its terms. Although it appears that Ms. Scott's actions were motivated by animus toward appellant's mother and, to some degree, appellant and his brothers, her reasons are not relevant to this appeal. The record does not reflect improper activity by Ms. Ellason, nor does it show that Ms. Scott lacked the requisite capacity to make her decisions or that the arrangements were defective. Ms. Scott died intestate, and thus all of appellant's complaints related to her "will" lack merit. Even if we interpret his issues to be attacking the making of Ms. Scott's trust and designation of Ms. Ellason as beneficiary, the record does not contain evidence to support appellant's complaints.[4]

We overrule appellant's complaints and affirm the trial court's order. We dismiss appellant's pending motions.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: November 20, 2013

---

[4] We have attempted to construe appellant's briefing liberally. *See* Tex. R. App. P. 38.9; *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 78 n.3 (Tex. App.—Texarkana 2008, pet. denied) ("We review and evaluate pro se pleadings with liberality and patience."). However, we must also expect pro se litigants to comply with the standards, laws, and rules applied to licensed attorneys. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978).